**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **NORMA LINDE, individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No. _____** |
| **v.** | **JURY TRIAL DEMANDED** |
| **ENVISION HEALTHCARE CORP., EMCARE HOLDINGS, INC., and KANSAS EM-I MEDICAL SERVICES, P.A.** | |
| **Defendants.** | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Norma Linde ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class and Collective Action Complaint against Defendants Envision Healthcare Corp. ("Envision"), EmCare Holdings, Inc. ("EmCare"), and Kansas EM-I Medical Services, P.A. ("Kansas EM-I") (collectively, "Defendants"), and hereby states and alleges as follows:

## INTRODUCTION

1.      Plaintiff and all other similarly situated employees work or worked for Defendant Envision, a healthcare management company and/or its wholly owned subsidiary EmCare. They are formally employed by one of hundreds of EmCare subsidiaries, which are technically owned by licensed physicians, but which are controlled and managed entirely by EmCare, and whose profits flow entirely to EmCare. Defendant Kansas EM-I Medical Services, P.A. is one such subsidiary, and the one which employs Plaintiff.

2.      Pursuant to their company-wide policies and procedures, Defendants failed to pay Plaintiff and other similarly situated employees for all hours worked including failing to pay

overtime when employees worked more than 40 hours in a single workweek.  This lawsuit seeks to recover these unpaid wages and overtime owed to Defendants' employees.

3.     Specifically, Plaintiff and other similarly situated employees regularly worked time in excess of their pre-scheduled shifts and time over 40 hours in a given week for which they were not paid.  Plaintiff, for instance, routinely spent time treating patients and writing, updating, and maintaining her patients' medical records – work that is critical to ensuring that the patients continued to receive proper care, after her shift had concluded.  Frequently, this would result in her working more hours than her scheduled shift and more than 40 hours in a particular week. Defendants did not compensate Plaintiff for this important and necessary work despite the fact that they were aware that it was being performed for their benefit without compensation, and despite their promise to pay her for all clinical hours that she worked.

4.     Defendants' systemic violations of federal and state wage laws were willful, in bad faith and were motivated by a desire to cut costs at the expense of their legal obligations to their employees.

5.     Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit as: (a) a collective action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, *et seq*., to recover unpaid overtime wages owed to Plaintiff and all other similarly situated workers employed by Defendants; and (b) a Rule 23 class action for breach of contract and other common law claims, as well as for violations of state wage payment laws.

## JURISDICTION AND VENUE

6.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  Federal question jurisdiction over the FLSA

claims of Plaintiff and all others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      Jurisdiction over the state law claims of Plaintiff and all others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case or controversy, and 28 U.S.C. § 1332(d)(2) because they seek class action certification in which at least one member of the class is a citizen of a state different from a defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

8.      This Court has personal jurisdiction over the Defendants.  Defendants together formed a joint employment relationship (a subject matter of Plaintiff's specific claims in this action) with respect to Plaintiff, which (1) resulted in supervision and control in Kansas over the work schedules, terms and conditions of employment, and manner in which Plaintiff performed her job; (2) resulted in the rates and methods of payment for Plaintiff being maintained and administered in Kansas; and (3) resulted in the creation and maintenance of employment records and the handling of payroll and human resources matters for Plaintiff in Kansas, including the specific payroll, time records and policies / practices at issue in this action. Thus, Defendant Envision and Defendant EmCare, acting through and controlling its Kansas subsidiary Kansas EM-I, together purposefully availed themselves of the privilege of conducting activities in Kansas. The specific claims at issue in this action arise out of and result from Defendants' Kansas-related activities, specifically Defendants' employment and underpayment of Plaintiff within the state. The exercise of specific personal jurisdiction over Defendants thus comports with fair play and substantial justice.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

10.     Plaintiff Norma Linde is a citizen and resident of Kansas.  Linde is an advanced practice registered nurse (APRN) who specializes in emergency medicine.  From December 2013 to May 2020, Plaintiff was employed by Defendants, working primarily in the emergency room department at Geary Community Hospital in Junction City, Kansas. Plaintiff's Consent to Join pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

11.     Defendant Envision is a Delaware corporation having its principal place of business in Tennessee.  Envision is a physician practice management company that employs doctors, nurses, and other healthcare professionals nationwide.  On or about June 2018, Envision was acquired by private equity firm KKR & Co., Inc. for approximately $9.9 billion.  According to Envision's 10-K filing with the Securities and Exchange Commission, "business is conducted primarily through two operating subsidiaries, EmCare Holdings, Inc. ("EmCare") and American Medical Response, Inc. ("AMR")".

12.     Defendant EmCare is a wholly owned subsidiary of Envision, incorporated in Delaware and having its principal place of business in Colorado.  EmCare provides physician practice management services for emergency departments, as well as in-patient physician services for hospitals, acute care surgery, trauma and general surgery, among other services.   Upon information and belief, EmCare's primary focus is on the field of emergency medicine.

13.     Defendant Kansas EM-I Medical Services, P.A. is a Kansas professional association having its principal place of business in Florida. It is a subsidiary of EmCare, which

does business by acting through hundreds of such subsidiaries to comply with regulations prohibiting direct corporate ownership of physician practice groups. All profits of Kansas EM-I and other such subsidiaries flow directly to EmCare.

14.     At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

## GENERAL ALLEGATIONS

15.     On or about December 26, 2013, Plaintiff executed a contract for her to begin employment with Defendants.  A true and accurate copy of his employment contract is attached hereto as Exhibit B.  Pursuant to the contract, Plaintiff was required to work as a nurse practitioner at Geary Community Hospital in Junction City, Kansas.

16.     The contract provides for Plaintiff to be compensated at an hourly rate of $65 for all "clinical hours worked."  Specifically, Defendants promise "as compensation for all services rendered pursuant to the agreement" to mail to Plaintiff each month the "[t]otal clinical hours worked during the Subject Month multiplied by the Hourly Rate."  Ex. B at 7.

17.     Defendants schedule Plaintiff and other similarly situated employees' hours and work shifts by disseminating to them a printed schedule for the upcoming week or weeks.

18.     Defendants maintained a uniform, nationwide, and company-wide corporate policy of paying their employees only for the hours listed on the pre-arranged schedule, and not for hours actually worked by said employees during the relevant period.  As a consequence, Plaintiff and other similarly situated employees were not paid for all work they performed for Defendants and

were not paid time-and-a-half for all time in excess of 40 hours in a given week, in violation of the FLSA.

19.     Pursuant to Defendants' uniform, nationwide, and company-wide policy, employees would be compensated for time spent working outside of their pre-scheduled shifts *only* if it was to treat "new" patients.  Even then, the time would only be compensated if the employee strictly followed a byzantine procedure, which required the physician to send a letter to his or her director requesting approval for payment, and setting out the precise reason additional time was worked, the number of patients treated during that time, those patients' complaints and diagnoses, and the amount of time requested for compensation.  Even if the director approved the request, it would still need to be sent up to the regional medical director for his or her approval as well.  Only upon the regional medical director's approval would additional time worked by Plaintiff and other similarly situated employees of Defendant be compensated.

20.     Pursuant to this uniform, nationwide, and company-wide policy implemented and maintained by Defendants, requests for compensation for additional time spent on other clinical tasks besides treating "new" patients were flatly rejected, regardless of procedure followed.  This includes time spent finishing up the care of existing patients, assisting colleagues with their patients, and time spent "charting" – that is, drafting, documenting, and updating patients' medical records, including information concerning their medical histories, courses of treatment, testing and results, diagnoses, and other information relevant and necessary to the patient's care.

21.     This policy was designed to discourage Plaintiff and other similarly situated employees from seeking compensation for time spent working outside the hours of their scheduled shifts.  It emanates from, and is consistent with, Defendants' corporate culture of prioritizing cost-

cutting and profit maximization over their legal obligations, including contractual obligations and promises to their employees.

22.     Upon information and belief, the policy has succeeded in its goal, as very few employees have ever submitted a request for compensation for additional time worked, let alone had such a request approved.

23.     Defendants' policy of refusing to pay for time worked in excess of pre-scheduled hours (unless for the treatment of "new" patients, and even then only after clearing the requisite red tape) was not set out in the employment contracts it entered into with Plaintiff and other similarly situated employees.  *See* generally Ex. B.  Further, it is in fact plainly inconsistent with said contracts, which promise to pay physicians for the "[t]otal clinical hours worked."  Ex. B at 7.

24.     The policy is further inconsistent with the FLSA, which requires employers to pay overtime work – that is, time in excess of 40 hours in a given week – at a "rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207.

25.     While employed by Defendant, Plaintiff has routinely worked for periods of time after her shifts were complete.

27.     At times, this work has consisted of finishing up the treatment of her patients, assisting a colleague with one of his or her patients, or other miscellaneous administrative tasks. Often, however, this additional time is spent charting.

28.     Charting is important and necessary clinical work.  Maintaining accurate and updated records is critical to ensuring that patients receive the medical care they need.  Proper charting allows the following treating personnel to know what treatment has been performed, what

tests have been done, and whether any diagnoses have been rendered, thereby helping to ensure continuity of care for a given patient.

29.     Proper charting is also necessary to Defendants' business purposes, as medical records are used to determine the rates at which they are paid by third-party payors such as Medicare, Medicaid, and private health insurance companies.

30.     In fact, Defendants' employment contracts with Plaintiff and other similarly situated employees explicitly state that "The Employee **shall** prepare and maintain such medical records incidental to the medical services that he performs hereunder as required under standard medical practices and as otherwise required by Employer." Ex. B at 3 (emphasis added).

31.     Nonetheless, despite the fact that time spent charting is unquestionably important clinical work necessary to Defendants' enterprise, Defendants maintain a uniform, nationwide, and company-wide policy that categorically precludes its employees from being compensated for such time if it was worked outside of their pre-scheduled shifts. As a result, Defendants have violated Plaintiff and other similarly situated employees' contractual rights by failing to pay them for all clinical hours worked.

32.     Pursuant to this corporate policy, Defendants have also violated the FLSA rights of Plaintiff and other similarly situated employees by failing to pay them at a rate of one-and-a-half times their regular rate of pay for all hours in excess of 40 worked in a given week.

33.     Defendants know, or at very least have reason to know, that Plaintiff and other similarly situated employees have performed work – including charting, treating patients, assisting colleagues with tasks, and general administrative work – outside of their pre-scheduled shifts and without compensation, notwithstanding their uniform corporate policies of refusing to pay for such work.

34.     The U.S. Department of Labor has issued formal guidance on this precise issue.

The Department has stated that "[e]mployees must be paid for work 'suffered or permitted' by the

employer even if the employer does not specifically authorize the work.  If the employer knows or

has reason to believe that the employee is continuing to work, the time is considered hours

worked."  U.S. Department of Labor, Wage and Hour Division, Fact Sheet #53,  The Health Care

Industry                             and                    Hours                    Worked,

https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs53.pdf, (last visited December 28,

2020).

35.     To illustrate this principle, the Department offered the following example:

> Example #13: A residential care facility pays its nurses an hourly rate. Sometimes
> the residential care facility is short staffed and the nurses stay beyond their
> scheduled shift to work on patients' charts. This results in the nurses working
> overtime. The director of nursing **knows additional time is being worked, but
> believes no overtime is due because the nurses did not obtain prior
> authorization to work the additional hours as required by company policy. Is
> this correct? No. The nurses must be paid time-and-one-half for all FLSA
> overtime hours worked**.

*Id.* (emphasis added).

36.     Likewise, Defendants are aware that Plaintiff and other similarly situated

employees have worked overtime without requisite compensation, notwithstanding their uniform,

nationwide, and company-wide policy of refusing to pay for such "unauthorized" time.

## JOINT EMPLOYMENT ALLEGATIONS

37.     Envision conducts much of its medical practice management business through its

operating subsidiary, EmCare. EmCare, in turn, operates a business model whereby it creates a

separate subsidiary legal entity for each state and in some circumstances for each location at which

it supplies physicians, nurses, and other medical personnel to provide medical services. It does this

because regulations prohibit for-profit corporations from directly owning physician practice groups.

38.     In an effort to comply with these regulations, EmCare and Envision's cutout subsidiaries are owned – nominally at least – by licensed physicians. But they are controlled, managed, and operated entirely by EmCare and Envision.  The payroll, human resources, legal, physician recruiting, and operation of each subsidiary is controlled by EmCare and Envision, though they forward operational documents for the nominal physician owner of the subsidiary to sign. Each of these nominal owners are employed by or otherwise associated with EmCare and/or Envision, from which they receive a salary.

39.     All profits earned by these cutout subsidiaries flow directly to EmCare and Envision, and none are kept by the nominal owners.

40.     EmCare and Envision control hundreds of such cutout subsidiaries nationwide, one of which – Kansas EM-I – is Plaintiff's direct and acknowledged employer.

41.     From their positions of control within the operation, EmCare and Envision operate and manage their cutout subsidiaries and instruct them on how and when to execute all manner of employment policies.  These subsidiaries, including Kansas EM-I, must and do follow EmCare and Envision's operational instructions.  Due to the pervasive control EmCare and Envision have exercised and continues to exercise over the employees at each of its subsiaries (both directly and indirectly), EmCare and Envision are the joint employers of Plaintiff and all others similarly situated.

42.     There is no material difference between the manner in which EmCare and

Envision treat each of its cutout subsidiary practice groups or the employees who work at the same. Each of the subsidiaries is akin to a regional office of EmCare and Envision's nationwide operation, for which they control and direct the policies and procedures across the country.

43.     At all relevant times, Defendants were the employer and joint employer of Plaintiff and all other similarly situated employees:

> a.     Defendants had the power to and exercised control over the hiring and firing of Plaintiff and all other similarly situated employees;
>
> b.     Defendants had the right to and did supervise and control the work schedules, conditions of employment, and the manner in which Plaintiff and all other similarly situated employees performed their jobs;
>
> c.     Defendants implemented policies governing when work performed outside of their employees' pre-scheduled shifts would be compensated;
>
> d.     Defendants determined the rate and method of payment for Plaintiff and all other similarly situated employees; and
>
> Defendants maintained employment records for Plaintiff and all other similarly situated employees.

44.     At all times relevant to this action, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

45.     Plaintiff brings Count I, the FLSA claim arising out of Defendants' overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

All persons currently and formerly employed by Defendants as medical employees, other than physicians, in hourly positions who worked more than forty (40) hours in a workweek at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

Plaintiff's FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

46.     Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendants' above-described FLSA violations.  The number and identity of other plaintiffs yet to opt-in and consent to be party-plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

47.     Plaintiff brings Count II (Breach of Contract), Count III (Unjust Enrichment and Quantum Meruit), and Count IV (Violation of the Kansas Wage Payment Act) pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of herself and all others similarly situated, and seeks to represent the following classes:

a.     **Breach of Contract Class:**  All medical employees (excluding physicians) currently or formerly employed by Defendants and paid hourly pursuant to a written employment contract, and who worked time outside of their scheduled shifts for which they were not compensated, at any time from five (5) years prior to the filing of this Class and Collective Action Complaint to the present.

b.     **Unjust Enrichment and Quantum Meruit Class:**  All medical employees (excluding physicians) currently or formerly employed by Defendants in hourly positions, who worked time outside of their scheduled shifts for which they were not compensated, at any time from three (3) years prior to the filing of this Class and Collective Action Complaint to the present.

c.     **Wage Payment Act Kansas Subclass:**  All medical employees (excluding physicians) currently or formerly employed by Defendants in hourly positions, who worked time outside of their scheduled shifts for which they were not compensated, worked more than forty (40) hours in a workweek, at any time from three (3) years

prior to the filing of this Class and Collective Action Complaint to the present within the state of Kansas.

Excluded from the Classes are the Defendants, any entity in which the Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

48. <u>Alternative State Classes:</u> Pursuant to Federal Rule of Civil Procedure 8(d), without prejudice to the foregoing nationwide classes, Plaintiff brings in the alternative the following Kansas classes for Count II (Breach of Contract) and Count III (Unjust Enrichment and Quantum Meruit). Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of herself and all others similarly situated, and seeks to represent the following Kansas classes:

   **a.** **Kansas Breach of Contract Class:** All medical employees (excluding physicians) currently or formerly employed by Defendants and paid hourly pursuant to a written employment contract, and who worked time outside of their scheduled shifts for which they were not compensated, at any time from five (5) years prior to the filing of this Class and Collective Action Complaint to the present within the state of Kansas.

   **b.** **Kansas Unjust Enrichment and Quantum Meruit Class:** All medical employees (excluding physicians) currently or formerly employed by Defendants in hourly positions, who worked time outside of their scheduled shifts for which they were not compensated, at any time from three (3) years prior to the filing of this Class and Collective Action Complaint to the present within the state of Kansas.

49. Plaintiff's claims and allegations that rely upon contractual duties and obligations are premised on the written provisions of her employment contract, which are materially the same as those of the members of the proposed class, and whose material terms are not subject to individual negotiation.

50.     Plaintiff's Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

51.     **Numerosity**.  Defendants employ tens of thousands of people across the United States.  Consequently, the Classes numbers in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied.  Moreover, because the members of the Classes are geographically dispersed across the country, joinder of all members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail or other means based on Defendant's records of its employees.

52.     **Commonality**. There are questions of fact and law common to the Class that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation, the following:

1.  Whether Defendants maintained a policy of refusing to pay Plaintiff and class members for time worked on behalf of Defendants in excess of the time listed on the pre-arranged schedules;

2.  Whether Defendants maintained a policy of refusing to pay Plaintiff and class members overtime rates for hours worked in excess of 40 in a given workweek;

3.  Whether Defendants knew or should have known that Plaintiff and class members were performing work outside of their pre-arranged schedules;

4.  Whether Defendants knew or should have known that Plaintiff and class members were performing overtime work without paying them at a rate of one-and-one-half times their regular rate of pay;

14

5.  Whether Defendants' company-wide policy for approval for payment of work performed outside of Plaintiff and class members' pre-arranged schedules is lawful;

6.  Whether Defendants owed Plaintiff and class members a contractual duty to pay them for all clinical time worked;

7.  Whether Defendants breached their contracts with Plaintiff and class members;

8.  Whether time spent by Plaintiff and class members charting and working on their patients' medical records when outside the scheduled time is deemed to be "clinical" time;

9.  Whether time spent by Plaintiff and class members treating patients and assisting colleagues with treatment-related tasks when outside the scheduled time is deemed to be "clinical" time;

10. Whether Defendants were unjustly enriched by virtue of their policies and practices with respect to Plaintiff's and class members' pay

11. Whether Plaintiff and the class are entitled to damages;

12. Whether Defendants acted in good faith with respect to their FLSA obligations.

53.     **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of Defendants'

employees have suffered losses from Defendants' failure to pay them for all hours worked, and failure to pay them overtime rates for overtime hours worked.  These claims arise from a common factual predicate, namely Defendants' failure to pay their employees for time worked outside of their pre-scheduled shifts.

54.     **Typicality.** Plaintiff's claims are typical of those of the Class as the absent members of the Class were employed in the same or similar positions as the Plaintiff and were subject to the same or similar conduct as Plaintiff.

55.     **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Class as a whole by maintaining a uniform, nationwide, and company-wide policy of refusing to pay for all clinical time worked by its employees, and refusing to pay overtime for hours worked in excess of 40 in a given workweek. The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

56.     **Adequacy**. Plaintiff is an adequate representative of the Class because she is a member of the Class and his interests do not conflict with the interests of those she seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel, who have extensive experience prosecuting complex class litigation.

57.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in

consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## ALLEGATIONS APPLICABLE TO THE FLSA CLAIM

58.     At all times relevant herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

59.     The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 207(a)(1).

60.     Defendants are subject to the overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

61.     During all times relevant to this action, Defendants were the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

62.     During all times relevant to this action, Plaintiff and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

63.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid overtime in accordance with 29 U.S.C. § 207(a).

64.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a).

65.      Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

66.     Plaintiff and all similarly situated employees are victims of uniform and nationwide policies.  Upon information and belief, Defendants are applying the same unlawful compensation policies to all similarly situated employees nationwide.

67.      Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether their conduct was prohibited by the FLSA.

68.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

69.     As a result of these violations of the FLSA's overtime pay provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## COUNT I – VIOLATION OF FLSA

### (Brought Against Defendants by Plaintiff Individually and on Behalf of All Others Similarly Situated)

70.     Plaintiff re-alleges the allegations set forth above.

71.     The FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

72.     At all times material herein, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

73.     Defendants violated the FLSA by failing to pay all hours worked, including overtime.  In the course of perpetrating these unlawful practices, Defendants has also failed to keep accurate records of all hours worked by its employees.

74.     Defendants are not eligible for any FLSA exemption excusing their failure to pay overtime.

75.     Plaintiff and other similarly situated employees are victims of a company-wide compensation policy.

76.     Plaintiff and other similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding their joining this action, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

77.     Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b).

Alternatively, should the Court find Defendants did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

78.     As a result of the aforesaid violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.

WHEREFORE, on Count I of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendants and pray this Court:

a.     Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

b.     Award Plaintiff and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

c.     Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.     Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.     Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.     Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT II – BREACH OF CONTRACT

**(Brought Against Defendants by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

79.     Plaintiff re-alleges the allegations set forth above.

20

80.     Defendants entered into a contract with Plaintiff and similarly situated employees through which it agreed that employees would get paid an agreed-upon hourly rate for every clinical hour worked during their employment.

81.     Defendants breached this contract by failing to pay Plaintiff and others similarly situated employees their agreed-upon hourly rate for every clinical hour worked during their employment.

82.     Specifically, Defendants refused and/or failed to pay Plaintiff and others similarly situated employees for time spent working before and after their pre-scheduled working shifts, even though said work was clinical in nature.

83.     Because of Defendants' breach, Plaintiff and the Class have been damaged.

WHEREFORE, on Count II of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Defendants and pray this Court:

        a.     Certify the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

        b.     Order Defendants to pay Plaintiff and the Class for the improperly withheld wages in violation of their contract;

        c.      Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law; and

        d.     Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT III – UNJUST ENRICHMENT AND QUANTUM MERUIT

### (Brought Against Defendants by Plaintiff Individually and on Behalf of All Others Similarly Situated)

84.     Plaintiff re-alleges the allegations set forth above.

85.     Defendants benefited from the unpaid work performed by Plaintiff and others similarly situated employees outside of their scheduled their shifts.

86.     Defendants were aware or should have been aware that they were receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

87.      Defendants' acceptance and retention of the benefit of Plaintiff and others similarly situated employees' unpaid labor was inequitable and resulted in Defendants being unjustly enriched.

WHEREFORE, on Count III of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendants and pray this Court:

    a.     Certify the state law claim set forth in Count III above as a class action pursuant to Fed. R. Civ. P. 23;

    b.     Order Defendants to disgorge the value of their ill-gained benefits to Plaintiff and the Class;

    c.     Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law; and

    d.     Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT IV – VIOLATION OF THE KANSAS WAGE PAYMENT ACT

**K.S.A. § 44-313 *et seq.***
**(Brought Against Defendants by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

88.     Plaintiff re-alleges the allegations set forth above.

89.      At all times relevant to this action, Plaintiff and others similarly situated employees were employed by Defendants within the meaning of the Kansas Wage Payment Act, K.S.A. § 44-313.

90.      Defendants' course of conduct described above violated the Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.*, in relevant part, by failing to pay all wages due to Plaintiff and others similarly situated employees pursuant to their employment contracts, and all overtime due to Plaintiff and others similarly situated employees pursuant to the FLSA.

91.      The Kansas Wage Payment Act, K.S.A. §§ 44-314, 44-315, and 44-316 require employers such as Defendants to pay all wages due to their employees.

92.      Defendants maintain a policy and practice of failing and refusing to pay wages due to Plaintiff and others similarly situated employees.

93.      As a result of Defendants' failure to pay wages for work performed by Plaintiff and others similarly situated employees outside of their pre-scheduled shifts, as well as their failure to pay overtime rates for hours worked in excess of 40 per week to Plaintiff and others similarly situated employees, Defendants have violated and continue to violate Kansas law.

94.      Defendants' failure to pay Plaintiff and others similarly situated employees all their wages due is willful and in violation of the Kansas Wage Payment Act, K.S.A. §§ 44-314.

WHEREFORE, on Count IV of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Defendants and pray this Court:

   a.      Certify the state law claim set forth in Count IV above as a class action pursuant to Fed. R. Civ. P. 23;

b. Order Defendants to pay Plaintiff and the Class for the improperly withheld wages in violation of their contractual agreement and the FLSA's overtime provisions;

c. Award Plaintiff and the Class penalties provided in K.S.A. § 44-315(b) and interest provided in K.S.A. §§ 16-201 and 44-323; and

d. Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the federal court in Kansas City, Kansas, as the place of trial.

Dated:  December 30, 2020    Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ George A. Hanson*
George A. Hanson, KS Bar # 16805
Alexander T. Ricke, KS Bar # 26302
Caleb J. Wagner, *pro hac vice* forthcoming
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**FORBES LAW GROUP, LLC**
Frankie J. Forbes, KS Bar #20725
6900 College Boulevard, Suite 840
Overland Park, KS 66211
Telephone: (913) 341-8600
Facsimile: (913) 341-8606

fforbes@forbeslawgroup.com

*Attorneys for Plaintiff*
*and the Proposed Classes*