IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORMA LINDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ENVISION HEALTHCARE CORP., et al.,<br><br>Defendants. | Case No. 2:20-cv-02661-HLT-TJJ |

**MEMORANDUM AND ORDER**

Plaintiff Norma Linde filed this collective/class action complaint alleging violations of the Fair Labor Standards Act ("FLSA") and Kansas Wage Payment Act ("KWPA"), breach of contract, and unjust enrichment/quantum meruit. Defendants move to dismiss Plaintiff's unjust enrichment/quantum meruit claim and Plaintiff's KWPA claim as to overtime, and they move to strike the class and collective allegations. Doc. 17. For the reasons stated below, the Court denies without prejudice Defendants' motion to dismiss Count III (unjust enrichment/quantum meruit) but grants Defendants' motion as to Plaintiff's overtime claim under the KWPA in Count IV. Defendants' motion to strike the class and collective allegations is denied.

**I.   BACKGROUND**

For purposes of a motion to dismiss, the Court accepts the following facts in the first amended complaint as true. Defendants are Envision Healthcare Corp., EmCare Holdings, Inc., and Kansas EM-I Medical Services, P.A. Doc. 16 at ¶ 1. EmCare provides physician practice management services for emergency departments and hospitals. *Id.* ¶ 12. The amended complaint alleges Defendants were joint employers of Plaintiff and other similarly situated employees. *Id.* ¶ 43.

Plaintiff Norma Linde is an advanced practice registered nurse who specializes in emergency medicine. *Id.* ¶ 10. From December 2013 through May 2020, Plaintiff worked for Defendants at the emergency department at Geary Community Hospital in Junction City, Kansas. *Id.* On December 26, 2013, Plaintiff signed a contract with Defendants to work as a nurse practitioner at the Geary Community Hospital. *Id.* ¶ 16. The contract stated Plaintiff would be paid at an hourly rate of $65 and would be compensated for the "[t]otal clinical hours worked during the Subject Month multiplied by the Hourly Rate." *Id.* ¶ 17. Plaintiff alleges the terms of her contract are materially the same as the proposed class members and not subject to individual negotiation. *Id.* ¶ 49.

Defendants scheduled Plaintiff and other employees by disseminating printed schedules for the upcoming weeks. *Id.* ¶ 18. Defendants maintained a company policy of only paying employees for the hours listed on the pre-scheduled shifts and not for the hours actually worked by the employee. *Id.* ¶ 19.

Plaintiff alleges that she and other similarly situated employees regularly worked hours in excess of the pre-scheduled shifts, including time over 40 hours in a week, for which they were not paid. *Id.* ¶ 3. This included time treating patients and writing, updating, and maintaining patients' charts. *Id.* Specifically, Plaintiff routinely worked after her shifts were complete finishing up patient treatment, assisting colleagues, performing administrative tasks, or charting. *Id.* ¶¶ 26-27. Charting is important clinical work and is necessary to ensuring patients receive proper medical care, as well as ensuring Defendants are paid by insurers. *Id.* ¶¶ 28-29. The employment contract explicitly states that "[t]he Employee shall prepare and maintain such medical records incidental to the medical services that he performs hereunder as required under standard medical practices and as otherwise required by Employer." *Id.* ¶ 30. Despite this, Defendants maintain a company-

2

wide policy precluding employees from being paid for time charting if it was done outside of pre-scheduled shifts. *Id.* ¶ 31. As a result, Plaintiff and other similarly situated employees were not paid for the all the time they worked or paid time-and-a-half for time worked in excess of 40 hours a week. *Id.* ¶ 19.

Per company policy, the only time employees would be compensated for time spent working outside of pre-scheduled shifts was when they treated "new" patients. *Id.* ¶ 20. But this required employees to strictly follow a "byzantine procedure," which required a physician to send a letter to the director requesting approval for payment that set out the reason the additional time was worked, how many patients were treated during that time, the patients' complaints and diagnoses, and the amount of compensated time requested. *Id.* The regional medical director had to approve this request as well. *Id.* Requests for additional time spent on other clinical tasks, including finishing up the care of existing patients, assisting colleagues, and charting, were flatly rejected. *Id.* ¶ 21. This policy was designed to discourage employees from seeking compensation for time spent working outside the pre-scheduled shifts and emanated from the corporate culture of maximizing profits. *Id.* ¶ 22. As a result of this policy, very few employees ever requested additional compensation or had such a request approved. *Id.* ¶ 23. This policy was not set out in the employee contracts and was inconsistent with the contractual agreement to pay for "[t]otal clinical hours worked." *Id.* ¶ 24.

Plaintiff asserts a violation of the FLSA for failure to pay for all hours worked, including overtime (Count I), breach of contract for failing to pay the agreed-upon hourly rate for all clinical hours worked (Count II), unjust enrichment and quantum meruit for unpaid gap time for hours worked in weeks where Plaintiff worked less than 40 hours (Count III), and violation of the Kansas Wage Payment Act for unpaid wages due to Plaintiff under the employment contract, as well as

overtime due pursuant to the FLSA (Count IV). *Id.* ¶¶ 70-96. All counts are alleged by Plaintiff individually and by others similarly situated. *Id.*

The amended complaint includes collective and class-action allegations. Count I is asserted as an opt-in collective action under 28 U.S.C. § 216(b) on behalf of Plaintiff and:

> All persons currently and formerly employed by Defendants as medical employees, other than physicians, in hourly positions who worked more than forty (40) hours in a workweek at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

*Id.* ¶ 45. Counts II-IV are brought as class actions under Rule 23, and Plaintiff asserts these counts satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of that rule. *Id.* ¶¶ 47, 50-56. The proposed classes include:

> **a.     Breach of Contract Class:** All medical employees (excluding physicians) currently or formerly employed by Defendants and paid hourly pursuant to a written employment contract, and who worked time outside of their scheduled shifts for which they were not compensated, at any time from five (5) years prior to the filing of this Class and Collective Action Complaint to the present.
>
> **b.     Unjust Enrichment and Quantum Meruit Class:** All medical employees (excluding physicians) currently or formerly employed by Defendants in hourly positions, who worked gap time outside of their scheduled shifts for which they were not compensated, at any time from three (3) years prior to the filing of this Class and Collective Action Complaint to the present.
>
> **c.     Wage Payment Act Kansas Subclass:** All medical employees (excluding physicians) currently or formerly employed by Defendants in hourly positions, who worked time outside of their scheduled shifts for which they were not compensated, worked more than forty (40) hours in a workweek, at any time from three (3) years prior to the filing of this Class and Collective Action Complaint to the present within the state of Kansas.

*Id.* ¶ 47. Plaintiff also proposes alternative Kansas classes for the breach-of-contract claim and unjust enrichment/quantum meruit claims. *Id.* ¶ 48.

## II. ANALYSIS

Defendants seek dismissal of two claims and ask the Court to strike Plaintiff's class and collective allegations. Specifically, Defendants seek dismissal of Plaintiff's unjust enrichment/quantum meruit claim in Count III because Plaintiff has adequate remedies under the KWPA, and dismissal of Plaintiff's unpaid overtime claim under the KWPA in Count IV because the KWPA does not allow for such a claim.

Defendants also move to strike the class claim for Count II (breach of contract) as lacking commonality and predominance; the class claims in Count IV (KWPA) and Plaintiff's proposed alternative class claims in Count II (breach of contract) and Count III (unjust enrichment/quantum meruit) for lack of numerosity; and the collective claim in Count I (FLSA) because it covers people not similarly situated to Plaintiff.

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, "[a] district court may grant judgment as a matter of law under Federal Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense like preemption when the law compels that result." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015). In undertaking this analysis, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions or conclusory statements. *Iqbal*, 556 U.S. at 678-79.

5

### 1. Count III – Unjust Enrichment/Quantum Meruit for Unpaid Gap Time

Defendants first move to dismiss Plaintiff's unjust enrichment/quantum meruit claim because Plaintiff has adequate remedies at law under the KWPA for unpaid gap time and cannot also seek equitable relief for the same wages. Plaintiff contends this claim is permitted as an alternative theory of recovery to her KWPA claim.

Generally, equitable claims like Plaintiff's unjust enrichment/quantum meruit claim are not available if there is an adequate legal remedy. *Pierce v. PrimeRevenue, Inc.*, 2017 WL 4552136, at *3 (D. Kan. 2017). Courts have in fact dismissed unjust enrichment/quantum meruit claims where the KWPA provides an adequate legal remedy. *Rukavitsyn v. Sokolov Dental Lab'ys, Inc.*, 2012 WL 3066578, at *6 (D. Kan. 2012). But "[c]ourts have also allowed parties to bring alternative claims for quantum meruit in unpaid wage cases," at least where the equitable claim provides relief beyond what is available in either the FLSA or KWPA. *McFarland v. Stratford Commons Rehab. & Health Care Ctr., LLC*, 2017 WL 4776960, at *1-2 (D. Kan. 2017); *see also Charbonneau v. Mortg. Lenders of Am., L.L.C.*, 2018 WL 6411447, at *2 (D. Kan. 2018).

Here, Plaintiff's unjust enrichment/quantum meruit claim seeks relief for unpaid gap time, i.e., unpaid straight time as opposed to unpaid overtime. *See* Doc. 16 at ¶ 85. Plaintiff's KWPA claim ostensibly seeks both unpaid gap time and overtime. *See id.* ¶ 95. Plaintiff anticipates Defendants may raise defenses to her KWPA claim for unpaid gap time and thus argues she should be able to maintain her equitable claim as an alternative theory at this early stage of the case. *See* Doc. 22 at 11. The Court agrees.

Although Plaintiff's unjust enrichment/quantum meruit claim currently seeks some of the same unpaid wages as her KWPA claim, if her KWPA gap-time claim is defeated, she will not have a legal remedy for that time because the FLSA does not cover unpaid gap time. *See Tommey*

*v. Computer Scis. Corp.*, 2013 WL 1000659, at *2 (D. Kan. 2013) ("Courts have allowed a claim for unjust enrichment or quantum meruit to proceed when the claim seeks something more than what the FLSA can provide—such as regular wages not paid at the contracted rate or 'gap time' wages."). Although Defendants do not currently challenge Plaintiff's KWPA gap-time claim, that may change as the case progresses. *See* Doc. 27 at 4 (Defendants' reply stating that they "do not dispute that Plaintiff is permitted to seek (but not recover) 'gap time' wages that she alleges are owed based on that contract under the KWPA" (emphasis added)). It therefore would be premature to dismiss the unjust enrichment/quantum meruit claim as duplicative. *See Charbonneau*, 2018 WL 6411447, at *2 (noting it would be premature to dismiss an equitable claim where the court has not had the chance to determine whether the FLSA or KWPA claims are viable); *see also Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1188 (D. Kan. 2011) (finding that dismissal of an alternative equitable theory at summary judgment was appropriate because the court had rejected the defendant's construction of the KWPA).

To the extent Plaintiff's KWPA gap-time claim ultimately survives, Defendants may reassert this argument. But at this early stage of the case, Defendants' motion to dismiss Count III is denied without prejudice.

### 2. Count IV – KWPA Claim for Unpaid Overtime

Second, Defendants move to dismiss the portion of Plaintiff's KWPA claim seeking unpaid overtime because the KWPA does not provide a cause of action for unpaid overtime. In support, Defendants rely on this Court's decision in *Charbonneau*, which concluded that the KWPA does not provide a cause of action for unpaid overtime based on the FLSA. *Charbonneau v. Mortg. Lenders of Am., L.L.C.*, 2020 WL 3545624, at *10-11 (D. Kan. 2020); *see also Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 993 (D. Kan. 2018) ("The KWPA, therefore, was not intended

to provide a separate means to recover for FLSA violations, but to provide workers with a means to recover for violations not covered by the FLSA.").

In *Charbonneau*, the Court analyzed divergent cases in the District of Kansas addressing this issue. 2020 WL 3545624, at *10-11 (citing cases). The Court found that overtime and minimum-wage claims in Kansas are governed by the Kansas Minimum Wage Maximum Hour Law ("KMWMHL"), which is a more targeted statute than the KWPA. *Id.* Because the KMWMHL specifically excludes claims for unpaid overtime against FLSA-covered employers, the Court found it "would undermine the Kansas legislature's statutory scheme to allow plaintiffs to bypass this scheme and pursue unpaid minimum wages and overtime through the KWPA." *Id.* at *11. In other words, a plaintiff should not be able to use the KWPA's broad language that employers shall pay "all wages due," *see* K.S.A. § 44-314(a), to seek minimum or overtime wages due under the FLSA where another more targeted state law specifically excludes such claims against FLSA-covered employers. *See id.*; *see also Spears v. Mid-America Waffles, Inc.*, 2011 WL 6304126, at *4-5 (D. Kan. 2011).

Plaintiff acknowledges this ruling. Doc. 22 at 12. But she argues it should be reconsidered because the parties in *Charbonneau* did not cite a Kansas regulation that Plaintiff contends extends the KWPA to wages due under the FLSA. *Id.* at 13. This argument, however, just tries to expand on what is meant by "all wages due." It does not consider the analysis in *Charbonneau* that reading the KWPA in such a way, namely, to extend to overtime wages provided for by the FLSA, would undermine the KMWMHL. *See Charbonneau*, 2020 WL 3545624, at *11. Further, the Court notes that *Charbonneau* relied in part on the decision in *Blair*, which did consider the regulation relied

8

on by Plaintiff. 309 F. Supp. 3d at 986. *Blair* nevertheless found that the KWPA did not support a cause of action based on the FLSA.[1] *Id.*

Plaintiff does not persuade the Court that it should break from its previous decision in *Charbonneau*.[2] Accordingly, to the extent Plaintiff seeks unpaid overtime under the KWPA in Count IV, that claim is dismissed because the KWPA does not support that claim. *See Charbonneau*, 2020 WL 3545624, at *10-11.[3] Defendants' motion on this point is granted.

In sum, the Court denies without prejudice the motion to dismiss Count III and grants the motion to dismiss the portion of Count IV seeking overtime wages. The remaining claims are Count I (FLSA, overtime), Count II (breach of contract), Count III (unjust enrichment/quantum meruit, gap time and overtime), and Count IV (KWPA, gap time).

**B.    Motion to Strike**

Although motions to strike are generally disfavored, courts can address at the pleading stage legal issues relating to putative class actions. *In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 1391045, at *2 (D. Kan. 2016); *see also* Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."). But this is typically done to address "the legal viability of class claims at the pleading stage where the issues are distinct from class certification issues arising under Rule 23" unless "<u>it is clear from the pleadings</u> that the requirements for class certification under Rule 23

---

[1]  *Blair* considered whether the KWPA supported a minimum-wage claim. Because the FLSA provides both minimum-wage and overtime claims, *Blair*'s analysis is analogous.

[2]  Plaintiff alternatively suggests in a footnote that this question should be certified to the Kansas Supreme Court. But other than a single sentence, this request is not developed, and the Court does not consider it.

[3]  Plaintiff also asserts a gap-time claim under the KWPA. Defendants do not challenge this claim, and therefore this portion of Count IV survives.

cannot be satisfied." *Syngenta*, 2016 WL 1391045, at *2 (emphasis added); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) ("The court need not wait for a motion for class certification if the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims." (internal quotation and citation omitted)).

### 1. Class Claims in Count II (Breach of Contract)

Defendants first argue that the Court should strike Plaintiff's class allegations in Count II for breach of contract. Defendants argue that the class claims will fail for commonality because they will be dependent on an independent review of each class member's contract and because individual issues will predominate over class claims.

The Court disagrees that such a ruling is appropriate at this time and on this record. In considering Defendants' motion, the Court accepts as true the allegations in the amended complaint. *See Iqbal*, 556 U.S. at 678. The amended complaint alleges that Plaintiff's breach of contract claims "are premised on the written provisions of her employment contract, which are materially the same as those of the members of the proposed class, and whose material terms are not subject to individual negotiation." Doc. 16 at ¶ 49. Further, the amended complaint alleges that despite contracting with employees and agreeing to pay an hourly rate for all "clinical hours worked," Defendants "maintained a uniform, nationwide, and company-wide corporate policy of paying their employees only for the hours listed on the pre-arranged schedule, and not for hours actually worked by said employees during the relevant period." *Id.* ¶ 19; *see also id.* ¶¶ 80-81 (alleging that Defendants entered to into contracts with Plaintiff and similarly situated employees agreeing to pay for all clinical hours worked and that Defendants breached these contracts). Thus, at this stage, it is not "clear from the pleadings that the requirements for class certification under

Rule 23 cannot be satisfied," *Syngenta*, 2016 WL 1391045, at *2, particularly as to commonality and predominance. Whether Plaintiff will be able to satisfy the class-certification standard on the breach-of-contract claim remains to be seen. But that is an issue for a class-certification motion. It is premature at this stage to strike Plaintiff's class claim as to Count II.

      **2.    Class Claims in Count IV (KWPA) and Alternative Class Claims Counts II (Breach of Contract) and III (Unjust Enrichment/Quantum Meruit)**

Second, Defendants argue that the Court should strike the class claims in Count IV (KWPA) and the alternative Kansas class claims in Count II (breach of contract) and Count III (unjust enrichment/quantum meruit) for failure to meet the numerosity requirement. Defendants' argument on this point is based on its unsupported assertion that there are only 20 individuals that meet these class definitions. Doc. 17 at 20.

At this stage, the Court will not rely on Defendants' unsupported assertion that a class is too small to meet the numerosity requirement to justify striking Plaintiff's class allegations. The amended complaint asserts that Defendants employ tens of thousands of people and that the classes may number "in at least the hundreds and most likely thousands." Doc. 16 at ¶ 51. As noted above the Court accepts as true the allegations in the amended complaint at this stage, and it will only strike class allegations where it is clear form the face of the pleadings that the requirements of Rule 23 cannot be met. *Syngenta*, 2016 WL 1391045, at *2. Defendants make no effort to satisfy this standard, and its motion to strike the class allegations in Counts IV and the alternative Kansas class claims in Counts II and III is denied.

      **3.    Collective Claim in Count I (FLSA)**

Third, Defendants argue that the Court should strike Plaintiff's collective allegations under Count I (FLSA) as overbroad because it covers persons who are not similarly situated to Plaintiff

11

and because it may include individuals who were paid overtime and who therefore did not suffer harm under the FLSA.

But as Plaintiff notes, the amended complaint contends that Defendants maintained a company-wide policy of only paying employees for the hours listed on their pre-scheduled shifts instead of hours actually worked, and as a result, Plaintiff and other employees were not paid for all hours worked and "were not paid time-and-a-half for all time in excess of 40 hours in a given week, in violation of the FLSA." Doc. 16 at ¶ 19. Accordingly, if accepted as true, this would entitle the proposed class, including employees "who worked more than forty (40) hours in a workweek," to relief under the FLSA.

To the extent Defendants seek to challenge Plaintiff's collective claims under the FLSA, that is an issue more appropriately addressed in the two-step certification procedure routinely employed in collective FLSA actions. It would be premature to address these issues on the very cursory arguments advanced by Defendants. Accordingly, Defendants' motion is denied to the extent it seeks to strike the collective claims under Count I (FLSA).

### III. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Partial Motion to Dismiss and to Strike Class and Collective Allegations (Doc. 17) is DENIED IN PART AND GRANTED IN PART. Defendants' motion is DENIED WITHOUT PREJUDICE as to Count III and GRANTED as to Count IV to the extent Plaintiff seeks unpaid overtime under the KWPA. Defendants' motion is DENIED as to the request to strike class and collective allegations.

IT IS SO ORDERED.

Dated: July 22, 2021    /s/ *Holly L. Teeter*
                        HOLLY L. TEETER
                        UNITED STATES DISTRICT JUDGE