IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORMA LINDE, <br><br> Plaintiff, <br><br> v. <br><br> ENVISION HEALTHCARE CORP., et al., <br><br> Defendants. | Case No. 2:20-cv-02661-HLT |

**MEMORANDUM AND ORDER**

This is an action for unpaid wages brought by Plaintiff Norma Linde against Defendants Envision Healthcare Corp., EmCare Holdings, Inc., and Kansas EM-I Medical Services, P.A. Linde was a part-time employee. She claims that she routinely worked beyond her scheduled shifts but was not compensated for that time. She also claims that one week she worked more than 40 hours but did not receive overtime pay. She brings claims under the Fair Labor Standards Act ("FLSA"), the Kansas Wage Payment Act ("KWPA), and state law.

Defendants move for summary judgment and argue, in part, that Linde does not have sufficient evidence showing that she was improperly compensated or that they knew she was working extra time but not being paid for it. The Court finds that Defendants are entitled to summary judgment on Linde's FLSA overtime claim because Linde has not shown sufficient facts to prove that she worked in excess of 40 hours in a workweek or that Defendants had knowledge that she did. The Court declines to exercise supplemental jurisdiction over Linde's remaining state-law claims and dismisses them without prejudice.

**I.   BACKGROUND**

The following facts are undisputed for purposes of summary judgment unless otherwise noted. Linde worked as an Advance Practice Registered Nurse for Kansas EM-I Medical Services, P.A. at the emergency room of the Geary Community Hospital from December 2013 through May 2020. Doc. 66 at ¶ 1. Kansas EM-I is a subsidiary of EmCare, which is a subsidiary of the healthcare management company Envision. *Id.* ¶¶ 2-4. All three are defendants.

Linde was employed on a part-time basis, and her employment was governed by a contract. *Id.* ¶¶ 8, 14. Kansas EM-1 agreed to pay Linde $65 per hour for "clinical hours worked." *Id.* ¶ 9. "Clinical hours" includes charting. *Id.* ¶ 10. Linde's contract stated that her compensation would be the "[t]otal clinical hours worked during the Subject Month multiplied by the Hourly Rate plus any applicable overtime compensation earned during the period." *Id.* ¶ 11. The contract also required Linde to obtain approval for hours worked in excess of 40 hours per week. *Id.* ¶ 12. But the contract did not state that she would not be paid for overtime worked that was not approved in advance. *Id.*; *see also* Doc. 70 at 13. Company policy stated that employees were required to check their time records to ensure accuracy and to report discrepancies so they could be corrected. Doc. 66 at ¶ 18. Defendants' policy also required that employees were to complete patient charting before ending the workday and leaving the hospital. Doc. 70 at ¶ 70; *see also* Doc. 71-7 at 33; Doc. 71-8 at 32.

Defendants gave Linde a monthly schedule with her assigned shifts. Doc. 66 at ¶¶ 20, 25. Defendants used a program called EmTime that logged employees' schedules and created a summary that was submitted to payroll. *Id.* ¶ 21. An employee at the Geary Community Hospital could request a modification of the hours listed in EmTime, which would have to be approved by a superior. *Id.* ¶ 22. Employees could also request a modification directly with the scheduler. *Id.*

¶ 23. But EmTime did not have a clock-in/clock-out function. Payroll records reflect that Linde's scheduled hours and actual hours worked were the same for all shifts between December 3, 2017, and May 2, 2020. Doc. 70 at ¶ 68; *see also* Doc. 71-5. In other words, if she was scheduled for an 8-hour shift, she was paid for 8 hours of work unless she requested a modification.

From 2017 through 2020, Linde was scheduled for 12, 10, or 8 hour shifts. Doc. 66 at ¶ 26. But Linde testified she worked 1-2 extra hours each shift. *Id.* ¶ 27. Linde also testified she worked until 3am "one or two times" and she believes she worked more than 40 hours a week 2 or 3 times over the course of five years. *Id.* ¶¶ 29, 28. However, the manager who oversaw the Geary Community Hospital schedule testified that she never received a modification request from Linde. *Id.* ¶ 33.

The manager who oversaw Geary Community Hospital submitted a declaration stating that she was not aware that Linde worked hours beyond her scheduled shifts or overtime. *See id.* at ¶ 30; *see also* Doc. 66-2 at 4. Linde disputes this in her declaration. *See* Doc. 70-1. Linde's declaration states that at least five of Defendants' employees, including some with supervisory authority, were aware that Linde worked late. *Id.* at 2-3. Linde also contends that computer records would show the time she logged in and out and reflect that she stayed after the end of her shifts to do charting. *Id.* at 3.

Linde states that she never submitted any request to be paid for the extra time she worked at the end of her shifts because she was told at the start of her employment that she was paid by the schedule. *Id.* at 3-4. Linde never submitted her actual work hours to Defendant and was instead paid based on the hours she was scheduled. *Id.* at 4. Linde does not have any documentation showing the number of hours she actually worked in a given day. Doc. 66 at ¶ 34. Linde never complained that she was not being paid for hours she had worked. *Id.* ¶ 39.

Linde relies heavily on two emails from January 2014, shortly after Linde signed her contract. In one, Linde asked Defendants' staffing coordinator for whether she should stay after her shift if needed and whether she needed to clock in. Doc. 66-7 at 2. The staffing coordinator told her she shouldn't stay late unless approved "as Emcare has budget to hours." *Id.* When asked if she should fill out a paper time sheet, Linde was told, "you are paid by the schedule." *Id.* In a follow up email, the Regional Medical Director wrote to Linde:

> The process for overtime is important. Emcare stays very close to their projected budgets. Emcare will pay overtime if you are seeing new patients. You must send an e-mail to your director with a characterization of the types of cases that you saw and that they were new patients started after the shift ended. This is then approved by the director and forwarded to the regional medical director for approval. If a critical patient comes into the ER and the physician is tied up and you continue to manage the department that is valuable and should be reimbursed. It is important that your letter characterize the reason you stayed and the number of patients seen, their complaints and or diagnosis, and the amount of overtime you are requesting.
>
> Emcare does not pay to allow physicians to complete their charting after the shift is completed. Emcare does not pay to have you finish up a few cases before you leave. I still choose to stay late and close out cases to assist my colleagues at times, but it is not reimbursed.

*Id.* at 5. Linde claims she never reported the extra hours she worked or sought a modification in EmTime because she had been told in these emails that Defendants would not pay for extra time spent charting or treating existing patients. *See* Doc. 70 at ¶ 57; *see also* Doc. 70-1 at 3-4.

## II.     STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that

4

genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party in applying this standard. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

### III.  ANALYSIS

Linde asserts four claims. The first is an FLSA claim for unpaid overtime. *See* Doc. 60 at 6. That claim is based on a week in March 2018 where Linde claims she worked 60 hours but was not paid overtime pay for the 20 extra hours. *Id.* at 4, 8-9. The remaining three claims are for unpaid wages for the extra 1 or 2 hours Linde claims she worked after the end of every shift. *See id.* at 8-9. Uncompensated work for straight-time hours (i.e. unpaid time that falls under 40 hours) is known as "gap time." *See Lundy v. Catholic Health Sys.*, 711 F.3d 106, 115 (2d Cir. 2013). Gap time that does not raise overtime or minimum-wage issues is not compensable under the FLSA. *See Taylor v. McLane Foodservice, Inc.*, 2013 WL 943531, at *2 (D. Kan. 2013). Thus, Linde, who worked part-time and earned well in excess of minimum wage, only pursues these extra 1 or 2 hours of gap time alternatively under the KWPA or through state-law theories for breach of contract or unjust enrichment. *See* Doc. 60 at 8-9; *see also* Doc. 70 at 43 (stating that Linde "is not seeking to recover so called 'gap time' under the FLSA").

Despite the distinction between these claims both factually and legally, the parties both frequently conflate or collapse the analysis. To maintain clarity, the Court will refer to the alleged overtime Linde claims to have worked March 6-11, 2018, as "overtime," and to the extra 1-2 hours of post-shift work as "gap time."[1]

---

[1] Linde's FLSA claim for 20 uncompensated overtime hours is alleged to have occurred in a week that Linde was scheduled for 6 shifts of 8 hours each, for a total of 48 hours. Thus, the 20 hours of overtime she claims as damages

Defendants move for summary judgment on all of Linde's claims. Doc. 65. Linde has also filed for summary judgment against Defendant Kansas EM-I Medical Services only as to whether Linde may rely solely on her testimony to prove that she worked 1-2 hours beyond her scheduled shifts and whether time spent charting is compensable. *See* Doc. 64 at 1-2. Because the Court's subject-matter jurisdiction stems from the existence of Linde's FLSA overtime claim, *see* Doc. 60 at 1, the Court starts with Defendants' argument that they are entitled to summary-judgment on that claim.[2]

### A. FLSA Overtime Claim

The FLSA requires an employer to pay its employees "one and one-half times the regular rate at which he is employed" for time worked in excess of 40 hours in a workweek. *Charbonneau v. Mortg. Lenders of Am. L.L.C.*, 487 F. Supp. 3d 1081, 1086 (D. Kan. 2020) (quoting 29 U.S.C. § 207(a)(2)). To succeed on an FLSA overtime claim, "the plaintiff has the burden of proving that he performed work for which he was not properly compensated." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012). "To support such a claim, the plaintiff must show that she actually worked overtime, that the amount of overtime was shown by justifiable and reasonable inference, and the employer had actual or constructive knowledge of the overtime." *McMillin v. Foodbrands Supply Chain Servs., Inc.*, 272 F. Supp. 2d 1211, 1217 (D. Kan. 2003) (internal quotation and citation omitted).

---

includes 8 hours of scheduled time and 12 hours of unscheduled post-shift work (i.e. 2 extra hours for each of the 6 scheduled shifts). But she bases her FLSA overtime claim on the fact that she was <u>scheduled</u> for 48 hours, even though her damages go beyond that. *See* Doc. 70 at 43-44 ("Thus, even before counting her post-shift work, Plaintiff worked eight hours for which she was not paid an overtime premium. Adding in her estimated one to two extra hours per shift, Plaintiff worked between fourteen and twenty overtime hours that week.").

2   Defendants move for summary judgment on any gap-time or minimum-wage claim asserted by Linde under the FLSA. *See* Doc. 66 at 14-15. But Linde does not assert those claims. *See* Doc. 60 at 6.

6

1. **Working In Excess of 40 Hours Per Workweek**

Under this standard, the Court first considers whether Linde has evidence that a jury could rely on to find that she was not properly compensated under the FLSA, meaning evidence that would show she worked in excess of 40 hours in a workweek and was not paid time and a half for the excess hours. This is Linde's burden to show. *See Brown*, 700 F.3d at 1230.

Defendants argue that Linde cannot meet her burden because her only evidence that she worked overtime is her recollection that she worked overtime 2 or 3 weeks during the course of her employment. *See* Doc. 66 at 15. Defendants also point to payroll records, which they say show Linde never worked more than 40 hours in a given week. *Id.* at 17.[3] In response, Linde argues that a summary of her hours shows that she worked 48 hours from March 6, 2018, to March 11, 2018. Doc. 70 at 43-44. She states that she has therefore "cleared her burden" because this shows she worked 8 hours of overtime before even counting the extra 1-2 hours she claims to have worked after each shift. *Id.*

The FLSA's overtime provision states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in <u>any workweek</u> is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, <u>for a workweek longer than forty hours</u> unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C.A. § 207(a) (emphasis added). The FLSA uses the term "workweek," and employers are permitted to establish the start and end of that time period for purposes of determining whether overtime is required. *See* 29 C.F.R. § 778.105 ("An employee's workweek is a fixed and regularly

---

[3] It is undisputed that Linde was a part-time employee. Doc. 66 at ¶ 14.

7

recurring period of 168 hours—seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day."); *Wright v. Midway Logistics LLC*, 2022 WL 16833865, at *4 (D. Kan. 2022) ("[W]orkweek is a term of art under the regulations, and does not necessarily coincide with the calendar week.");[4] *Allen v. Gonzales Consulting Servs., Inc.*, 2011 WL 202088, at *2 (W.D. Mich. 2011) ("The standard for calculating whether any overtime is owed, therefore, is the 'workweek.'"). Accordingly, to show an FLSA overtime violation, a plaintiff must show that she was improperly compensated for overtime work, meaning that she worked more than 40 hours in a particular <u>workweek</u> but was not paid premium pay for the overtime hours.

Thus, whether Linde was improperly compensated under the FLSA's overtime provision turns on the parameters of what her "workweek" was. Linde points to a period of 6 consecutive days where she worked 48 scheduled hours. But she has not established that these 6 consecutive days were part of the same <u>workweek</u>. While they might fall within the same workweek, they also might span two separate workweeks, in which case the FLSA overtime provision would not apply.

All Linde offers on this point is a footnote stating that "Defendants have not established a definite beginning and end to their workweek, in violation of 29 C.F.R. § 516.2(a)(5)." Doc. 70 at 43 n.8.[5] But Linde does not explain the significance of not having an established workweek or how this impacts her FLSA overtime claim. Defendants state, also in a footnote, that March 11, 2018, was a Sunday and would have been in a separate workweek. Doc. 74 at 20 n.5.

---

[4]  *Wright* held that a pleading alleging work in excess of 40 hours in a "week" could be read to refer to a "workweek" under the standards of Federal Rule of Civil Procedure 8. 2022 WL 16833865, at *4. But that was in the context of a motion to dismiss. *Id.*

[5]  Although Linde states that Defendants violated federal regulations by not having a dedicated workweek, she does not assert a claim on that point, to the extent a private cause of action would be allowed.

The factual record regarding what workweek—if any—applied to Linde is unclear. Linde cites to deposition testimony by one of Defendants' employees stating that there was no established workweek for her position. *See* Doc. 70 at ¶ 69; *see also* Doc. 70-5 at 6. In support of their argument that Sunday March 11, 2018, was a separate workweek, Defendants contend that the workweek "began at the end of the day on Saturday and ran through the end of the next Saturday." Doc. 74 at 13 (citing Doc. 74-3 at 5). But the testimony cited by Defendants is confusing. When asked what the workweek was, Jennifer Naylor, an EmCare Regional Manager, *see* Doc. 66-2 at 3, answered "Saturday to Saturday." Doc. 74-3 at 5. When prompted whether she actually meant "Saturday to Sunday," she answered yes. *Id.* When asked whether it "starts at 12:01 on Saturday" and ends at "midnight on the following Sunday," Naylor answered yes. *Id.* at 5-6.

The Court finds that, to the extent this is a disputed fact issue, it ultimately is not material because neither position supports the conclusion that March 6-11, 2018, was part of the same <u>workweek</u> for purposes of the FLSA. Without some evidence regarding what her workweek was, Linde has not shown she has a submissible claim of unpaid overtime under the FLSA.[6]

---

[6] The parties extensively debate whether Linde should be permitted to rely on her testimony that she worked an extra 1-2 hours after each shift in accordance with *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). In *Mt. Clemens*, the Supreme Court held that "where the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. Linde contends that Defendants' records were inadequate and therefore she is entitled to "prove her unpaid time based solely on testimony of her own best recollection." Doc. 64 at 2. As explained above, the parties often blur the analysis of Linde's overtime and gap-time claims. That extends to the parties' discussion of *Mt. Clemens*. Given that Linde's overtime claim is premised on the time records themselves, i.e. that they purport to show she worked 48 hours in a 6-day period, it's unclear how or whether *Mt. Clemens* applies to Linde's FLSA overtime claim at all. In other words, Linde doesn't need to rely on her testimony to establish liability for her overtime claim because she is relying on the time records themselves. And even to the extent *Mt. Clemens* did apply, an employee is still required to show that she was improperly compensated before the burden-shifting inference comes into play in proving the <u>amount</u> of that time. *See Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85-86 (10th Cir. 1983); *see also Mt. Clemens*, 328 U.S. at 688 ("But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute."). Because Linde can't overcome that initial hurdle, i.e. that she was improperly compensated under the FLSA overtime provision, *Mt. Clemens* is ultimately irrelevant to her FLSA overtime claim.

## 2. Actual or Constructive Knowledge

Defendants also argue that Linde has not made a submissible FLSA overtime claim because she has no evidence that Defendants had actual or constructive knowledge that she was working overtime without compensation. Doc. 66 at 18-19. Knowledge is a required element of an FLSA overtime claim. *Renteria-Camacho v. DirecTV, INC.*, 2017 WL 4619354, at *7 (D. Kan. 2017) (stating that "plaintiff must show that defendant knew or should have known he was working overtime without compensation"). An employer who knows an employee is working overtime "cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1286 (10th Cir. 2020) (internal quotation and citation omitted); *see also Slattery v. HCA Wesley Rehab. Hosp., Inc.*, 83 F. Supp. 2d 1224, 1231 (D. Kan. 2000) ("Of course, an employer cannot defend an action for overtime benefits under FLSA on the grounds that it prohibited employees from working overtime, if there is evidence that the employer was nonetheless aware that employees actually worked more than 40 hours per week.").

Defendants point to Naylor's declaration, which states she was unaware that Linde ever worked overtime. Doc. 66 at 18; *see also* Doc. 66-2 at 4. Defendants argue that Linde never sought payment for overtime work, requested approval to work overtime, or notified Defendants that her pay was incorrect. Doc. 66 at 18-19. Thus, they argue they are entitled to summary judgment on Linde's FLSA claim.

Linde responds that Defendants had actual knowledge that she "continued to work after her shifts" because "numerous different co-workers were aware of her having to work late," including some who were her supervisors. Doc. 70 at 38-39. She also argues that despite having a

formal process for reporting overtime, Defendants "squelch[ed]" truthful reporting, as evidenced by the emails that she received at the start of her employment. *Id.* at 39-40. Specifically, Linde claims she was told that she should not track actual time worked and would be paid by the schedule, and that post-shift work was compensated only in limited circumstances. *Id.* Finally, Linde claims that computer records would have tracked the time she was working and put Defendants on notice that she was working past the end of her shift. *See id.* at 19-20. The Court finds that none of this creates a genuine issue of fact about whether Defendants were aware that Linde worked overtime.

First, the evidence that other co-workers or supervisors saw Linde working late is based only on Linde's declaration. There is no evidence from those individuals, and it's unclear what basis Linde has to testify as to what those individuals knew or didn't know, let alone whether that knowledge is imputable to Defendants. But even if her testimony was proper on that point, all she offers is that those individuals saw her "working late." Doc. 70-1 at 2. While that might be sufficient evidence that Defendants were aware that Linde was working beyond her scheduled shifts on some days, i.e. gap time, it is not evidence that Defendants were aware she was working overtime. It is undisputed that Linde was hired on a part-time basis. Doc. 66 at ¶ 14. Thus, even if she was known to routinely work beyond her scheduled shifts, that does not create an inference that she was working more than 40 hours in a given workweek, let alone in the one particular week on which she bases her FLSA claim.

Second, the emails exchanged in January 2014 do not show that Defendants had knowledge that Linde, who was being hired for a part-time position, was working uncompensated overtime in March 2018. Linde's primary complaints about the emails is how they indicated she would not be paid for post-shift work, which relates to her gap-time claim, not her overtime claim. As for overtime, Peterson's email clearly states the process for claiming overtime:

11

> The process for overtime is important. Emcare stays very close to their projected budgets. Emcare will pay overtime if you are seeing new patients. You must send an e-mail to your director with a characterization of the types of cases that you saw and that they were new patients started after the shift ended. This is then approved by the director and forwarded to the regional medical director for approval. If a critical patient comes into the ER and the physician is tied up and you continue to manage the department that is valuable and should be reimbursed.

Doc. 66-7 at 5. Additionally, it is undisputed that Linde <u>could</u> have requested a modification of her hours worked in EmTime.[7] *Cf. Boxum-Debolt v. Taylor*, 2016 WL 7014020, at *7 (D. Kan. 2016) (finding that a jury could find the defendants had constructive knowledge of overtime work where there were no procedures for employees to submit overtime). Even to the extent the January 2014 emails could be read as discouraging overtime, that is not a violation of the FLSA. *Whitaker v. Pac. Enters. Oil Co. (USA)*, 1992 WL 44729, at *2 (10th Cir. 1992) ("In our view, the unelaborated comments attributed to Bryant merely suggest that Pacific Enterprises may have discouraged overtime work, which does not constitute a violation of the FLSA.").

Third, Linde's declaration states that the computer program she used to do charting required unique login credentials and would have created time records showing she was working after the end of her shifts. *See* Doc. 70-1 at 3.[8] Defendants dispute whether the computer program did in fact create timestamps. *See* Doc. 74 at 11-12. But this dispute of fact is not material, nor does the Court need to decide whether Linde's declaration about what computer records might show is sufficient evidence on this point. Like her statement that employees saw her working late,

---

[7] Linde states that Naylor said "she never once approved a modification or request for overtime." Doc. 70 at 18. But as Linde concedes, and as Naylor testified, Naylor never received a request for modification from a Geary employee. *See id.* Naylor also testified that she never denied any request for modification that she did receive. *See* Doc 70-3 at 5.

[8] No computer records are provided.

12

the fact that computer records would reflect that she "worked late after the end of [her] shifts to do charting," *see* Doc. 70-1 at 3, does not establish that Defendants knew Linde worked <u>overtime</u>.

In sum, the Court agrees with Defendants that Linde has identified no evidence that a jury could rely on to conclude that Defendants had actual or constructive knowledge that she was working uncompensated overtime. Accordingly, Defendants are entitled to summary judgment on Linde's FLSA overtime claim.[9]

### B.      State-Law Claims

Linde's remaining claims are for unpaid gap time, i.e. the time Linde claims she worked after the end of her shifts, but not in excess of 40 hours per week. These claims arise under state law and are for breach of contract, unjust enrichment, and violation the KWPA.

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See also Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004) ("District courts do not otherwise have jurisdiction to hear pendent state law claims but for their intertwinement with claims over which they have original jurisdiction."). Once supplemental jurisdiction exists, a court may decline supplemental jurisdiction if an exception under 28 U.S.C. § 1367(c) applies. *See Gudenkauf v. Stauffer Commc'ns, Inc.*, 896 F. Supp. 1082, 1084 (D. Kan. 1995). Declining supplemental jurisdiction is a matter within a court's discretion. *Harshman*, 379

---

[9] Because the Court finds that Linde's FLSA overtime claim fails, it does not reach the issue of whether Defendants acted willfully for purposes of the FLSA. The Court does note that a finding of willfulness would seem to be a prerequisite for Linde's FLSA claim, as her overtime claim arose more than two years before she filed this case, but less than three years. *See* 29 U.S.C. § 255(a) (establishing a two-year statute of limitation for FLSA claims, but a three-year statute of limitation for willful violations).

13

F.3d at 1165. Under § 1367(c), "district courts may decline to exercise supplemental jurisdiction over a claim" under the following circumstances:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In deciding whether to exercise supplemental jurisdiction, a court also considers judicial economy, convenience, and fairness. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013).

Considering these factors, the Court declines to continue exercising supplemental jurisdiction over Linde's remaining claims for breach of contract, unjust enrichment, and violation of the KWPA.[10] The Court has determined that Defendants are entitled to summary judgment on Linde's only federal claim—her FLSA overtime claim. The remaining claims invoke state law. The issues argued by the parties include whether Linde satisfied a condition precedent of her contract, whether she waived the right to relief under the contract, and whether the *Mt. Clemens* framework applies to Linde's state-law claims. These issues are better resolved by state courts. Indeed, the Court notes that the parties briefing focuses extensively on the state-law claims, and those claims form the bulk of Linde's damages.[11]

---

[10] "[D]istrict courts have an independent obligation to address their own subject-matter jurisdiction and can dismiss actions sua sponte for a lack of subject-matter jurisdiction." *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017).

[11] Linde claims total damages of $64,220. Only $3,900 of that is for her FLSA overtime claim. However, she does also seek nearly $300,000 in attorneys' fees under the FLSA. *See* Doc. 60 at 8-9.

The Court is mindful that discovery is complete, and this case is set for trial in May 2023. However, given that the only federal claim has been dismissed and Linde's state-law claims predominate, declining supplemental jurisdiction is appropriate. Should Linde opt to pursue these claims in state court, the posture of this case should allow the matter to be quickly brought to trial by a state court.

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion for Summary Judgment (Doc. 65) is GRANTED IN PART. The Court grants summary judgment to Defendants on Linde's FLSA overtime claim. The Court declines to exercise supplemental jurisdiction over Linde's remaining state-law claims. Linde's claims for breach of contract, unjust enrichment, and violation of the KWPA are DISMISSED WITHOUT PREJUDICE.

THE COURT FURTHER ORDERS that Plaintiff's Motion for Partial Summary Judgment Against Defendant Kansas EM-I Medical Services, P.A. and Memorandum of Law in Support (Doc. 64) is DENIED AS MOOT and WITHOUT PREJUDICE.[12]

IT IS SO ORDERED.

Dated: March 2, 2023         /s/ *Holly L. Teeter*
                             HOLLY L. TEETER
                             UNITED STATES DISTRICT JUDGE

---

[12]  Linde's motion for partial summary judgment against Kansas EM-I Medical Services, P.A., focuses on whether she is entitled to a burden-shifting inference on her gap-time claims and whether charting is compensable under her contract. *See* Doc. 64. These arguments relate to her state-law claims, and thus the Court does not decide the motion.